WILLIAM L. ANKERMAN

37 MONTCLAIR DRIVE

WEST HARTFORD, CT 06107-1247

(860) 233-6703

FILED

2005 JUN 30 A 9:44

U.S. DISTRICT COURT
NEW HAVEN, CT

June 28, 2005

Honorable Peter C. Dorsey
District Judge
Federal District of Connecticut
141 Church Street
New Haven, CT 06510

Re: *Grievance Committee vs. William L. Ankerman*, 3:02gp10 (PCD); 2 GP 19; and 05 GP 5

Dear Judge Dorsey:

I am writing my response to the Order to Show Cause in the above-referenced files, filed in this court on June 16, 2005.

**I Procedural Background:**

As the record reflects, I was convicted on June 7, 2002, in CR99-195282, New Haven J. D., Superior Court, for a violation of Connecticut General Statutes § 53a-119(1) and -122 (a)(2). I appealed this conviction judgment *pro se*, unsuccessfully, as reflected in *State vs. Ankerman*, 81 Conn. App. 503, 840 A.2d 182 (2004), certif. denied, 270 Conn. 901, _____ A.2d ____ (2004), petition for *Certiorari* to the United States Supreme Court, in Docket No. 04-362, was filed on September 10, 2004, and denied on October 18, 2004, _____ U. S. _____, _____ S. Ct. _____, _____ L. Ed. 3rd _____ (2004), and was

1

sentenced to serve three years, execution suspended after six months, which execution of sentence was stayed by operation of law until after November 17, 2004.   I was also sentenced to three years probation following the completion of this sentence, plus an order of Restitution.

I was arrested on the additional charge of Failure to Appear [at the Execution of Sentence hearing, set for November 1, 2004], in the morning of November 17, 2004,[1] and pled guilty to this charge under the *Alford* doctrine, on December 8, 2004, and was sentenced [Damiani, J] on that charge to 3 years, execution suspended after nine months, concurrent with the prior sentence of June 7, 2002.   Also, on December 29, 2004, the original trial judge, Fracasse, J, disbarred me as an attorney, according to Connecticut procedure, following the felony conviction.   No appeal was taken from this Judgment.

I complied with the "Restitution" portion of the sentence on October 22, 2003, by an out-of-court settlement, with the complaining witness and her parents, coupled with an exchange of mutual releases, and withdrawal of the pending civil suit.

I was incarcerated from November 17, 2004, until the afternoon of June 3, 2005 [about 6-1/2 months] when I was released on *Transitional Supervision* until the End of Sentence on September 8, 2005, to be followed by three years probation.

On or about June 6, 2005, I filed a Petition for a New Trial, pursuant to Connecticut General Statutes § 52-270, arguing the illegality of my conviction on the basis of *ineffective assistance of counsel* and of *new evidence.*

Two of the three pending Presentments herein were filed while I was incarcerated, *with service on my home address.*[2]   I have filed a Formal

---

[1] I did not post a bond in this case.
[2] Whether this was valid service has not been addressed, nor has the question of any waiver of this possible defect.

Answer to each Presentment herein and have been placed on interim suspension during the proceedings. This Court previously granted two continuances of this Hearing, pending my release from prison.

The Local Federal Grievance Rules do not require *automatic* discipline, other than the interim suspension alluded to earlier, solely on the basis of the conviction of a "serious crime."

**II  Argument in Response:**

Therefore, my Response to the present Order to Show Cause highlights constitutional infirmities and procedural irregularities in the underlying conviction of June 7, 2002.

My attorney in the criminal trial, Jeremiah Donovan, of Old Saybrook, failed to preserve several of these issues which impeded my appeal. *State vs. Ankerman*, 81 Conn. App. 503 (2004).

Courts at all levels are about the business of doing justice. *Mooney vs. Holohan*, 294 U. S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406 (1935); *Pyle vs. Kansas*, 317 U. S. 213, 216, 63 S. Ct. 177, 87 L. Ed. 214 (1942).

This case was built upon lies, guided by the prosecutor, lies not only about the **facts**, but also about the **law**. *Cf. Yates vs. Texas*, 2005 WL 20416, ____ S. W. 3rd _____ (2005).

The law was important in this case, because the defendant's contemporaneous understanding of the law constituted the defendant's state of mind. The *law*,[3] at that point, became a *fact*, i. e., the defendant's good faith understanding of the law at the time of his actions in this case. The problem with this situation is clearly shown in *Morrissette vs. United States*, 342 U. S. 246 (1952), [proof of the defendant's culpable state of mind is *essential* to

---

[3] which is not a subject of legitimate "expert testimony." See *Marx & Co., Inc., vs. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir., 1977); *Specht vs. Jensen*, 853 F.2d 805 (10th Cir., 1988), etc.

3

warrant an embezzlement conviction.]   At the trial of the instant criminal case in the Superior Court, my testimony as to my understanding of the relevant law was grossly impeded by the prosecutor's generalized objections and the trial judge's rulings thereon, to the extent that my state of mind as to the *relevant* substantive law appeared almost to be *irrelevant.* to the jurors.[4]

Two errors by Attorney Donovan on my behalf had to do with the instruction of the jury as to the "wrongfulness" of my actions:

1. He filed no request to charge on this point and also failed to object to the judge's instructions as given.   This, understandably, limited my ability to appeal on those issues.

2. He also failed to object to the "expert testimony" by Attorneys Zemetis and Wright, as to Connecticut domestic law, as incompetent.   See *Marx & Co., Inc., vs. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir., 1977); *Specht vs. Jensen*, 853 F.2d 805 (10th Cir., 1988); *Turner's Appeal*, 72 Conn. 305, 316 (1899); *Lockwood vs. Crawford*, 18 Conn. 361, 370(1847); *Orange Street Armory Associates vs. City of New Haven*, 17 Conn. App. 166, 173, 551 A.2d 759 (1988).   Not only was this "expert testimony" incompetent under those cases, it was also irrelevant as to my state of mind at the time of my actions, absent any showing that I had the same timely *understanding* of the same law testified to, by the "experts."

Not only was this "expert testimony" **incompetent** under those cases, it was also *irrelevant* as to my state of mind at the time of my actions, *absent any showing that I had the timely understanding of he same law* testified to, by the "experts."   This substantive law, in their opinions, was also erroneous as to the actual law extant in 1994-96, the time of the "crime."

---

[4] In effect, this was a strict liability embezzlement case!

4

Examples of these errors include the following:

1. Expert testimony essentially stated that **a minor child could not, *as a matter of law*, be personally liable for medical "necessaries" provided to her during her minority.** This violates the classic rule laid down in *Strong vs. Foote*, 42 Conn. 205 (1875), and recently reaffirmed in *Yale Diagnostic Radiology vs. Estate of Fountain*, 267 Conn. 351, 838 A.2d 179 (2004), a case decided after the oral argument in my appeal to the Appellate Court.

2. Expert testimony provided that **probate courts have jurisdiction to order a nonparty** [ i.e., an attorney for one of the parties] **to pay a certain sum of money to a party to the probate estate, i.e., a "money judgment."** This violates the law stated in *Fowler vs. Collins*, 2 Root 231 (1795); *Edy vs. Williams*, 1 Root 185; *Spalding vs. Butts*, 5 Conn. 427 (1824); *Norton vs. Strong*, 1 Conn. 65 (1790); *Phillips vs. Moeller*, 147 Conn. 482, 163 A.2d 95 (1960); *Dettenborn vs. Hartford National Bank*, 121 Conn. 388, 185 At. 82 (1936); and *Palmer vs. Hartford National Bank*, 160 Conn. 415, 279 A.2d 726 (1971), because the **Probate Court** had neither subject matter jurisdiction to enter a "money judgment," nor *personal jurisdiction* over a non-party who was not served a summons to appear or, in any event, did not execute a waiver of notice of hearing in the case, as did all the parties thereto, allowing the entry of the Ex Parte Decree of December 4, 1998.

3. "Expert testimony" provided that **statutory interest is to be calculated by the plaintiff without effective court supervision,**[5] violating *Bertozzi vs. McCarthy*, 164 Conn. 465, 467, 323 A.2d 553 (1973).

---

[5] This interest amount was inserted on an Amended Final Account, dated November 25, 1998, which was the basis for the amicable suit, which resulted in the *ex parte* Decree of December 4, 1998.

4. "Expert testimony" opined that **statutory interest** [used in the Decree of December 4, 1998, **is calculated on the *gross* sum placed in the trustee's hands, *from the time* that sum is received by the Defendant, not from the time, when the *net* sum is due and payable**, violating *Fox vs. Schaeffer*, 131 Conn. 439, 446, 41 A.2d 46 (1944).

5. The "Experts" further opined that **statutory interest is subject to compounding**, violating the law set down in *Stafford Springs Agricultural Society Receivership*, 10 Conn. Supp. 201 (1941) [King, J, later Chief Justice], and *Cherokee Nation vs. The United States*, 270 U. S. 476, 490, 115 S. Ct. 1458, 131 L. Ed.2d 350 (1926) [Chief Justice, and ex-President, William Howard Taft].

6. The "Experts" further opined that **all trusts for minors, as a matter of law, must terminate when the minor reaches majority**. This is error so basic as to be exposed by a mere treatise. Bogert & Bogert, Law of Trusts (5th Ed.) § 149, at 536-37.

7. The "Experts" also testified that **subrogation liens are invalid, as a matter of law, vis-à-vis a minor's property,** contrary to *State vs. Blawie*, 31 Conn. Supp. 552, 334 A.2d 484 (1974), a case involving the father of the very prosecutor in my case in New Haven, *Senior Assistant State's Attorney, John F. Blawie.*

8. The "Experts" also testified that **the mere fact that the minor child was not a named party in *Yale University School of Medicine, Office of Professional Services vs. Forbes*, CV96-0383086 S, she was

6

precluded as a matter of law from being a "real party in interest," and had no stake in the outcome of that case, contrary to Connecticut law. *See generally* 2 Bollier & Busby, Stephenson's Conn. Civ. Proc. (3rd Ed.) § 177(a), n. 234.


9. The "Experts" also implicitly opined that **implied contracts do not apply to contracts retaining legal services**, contrary to *Butler vs. Solomon*, 127 Conn. 613 (1941). *See generally* Wright & Ankerman, Conn. Jury Instructions (4th Ed. Civil) § 153.


10. The "Experts" also opined implicitly that **in any probate case, the probate judge must rule on the reasonableness and legitimacy of legal fees before the lawyer has a right to them.** *This is simply not the law.* The law is that the **probate judge must approve the fees before they are acceptable as a credit on any accounting filed by a fiduciary**, but that their legality vis-à-vis the creditor lawyer is determined by substantive contract law.


    Therefore, not only was the "expert testimony" *incompetent*, as argued above it was also *erroneous* in at least the ten instances noted above, which testimony substantially influenced the jurors' understanding of whether Defendant's actions were "wrongful," *required* for a conviction of embezzlement, where they had no specific instructional guidance from the Court.

    Attorney Donovan also failed to object to the judge's instructional characterization of Attorneys Zemetis and Wright as "expert witnesses." This

misleading instruction also would have affected the jury's assessment of their credibility *vis-à-vis* the Defendant's.

Attorney Donovan also failed to object to the Amended Information, dated March 12, 2002, *in any way*, when it was clearly constitutionally defective, in at least three particulars:

1. It failed to allege a specific location where the crime allegedly took place.
2. It failed to allege specific property allegedly taken.   *Moore vs. United States*, 160 U. S. 268, 40 L. Ed. 422, 16 S. Ct. 294 (1895) and *Grant vs. State*, 17 So. 225 (Fla. Supreme Court, 1895).
3. It failed to allege[6] the *fair market value* of the *specific property* "taken." *State vs. Golding*, 213 Conn. 233, 567 A.2d 823 (1899).

Perjury was also evident in the testimony of the complaining witness, Elizabeth Forbes Rys, and of her father, Leslie Forbes, when they each testified that all legal work done by Ankerman was performed pursuant to the original contingency fee agreement[7] of November, 1992, "to tie up loose ends." The *knowing falsity* of this testimony is proved by the existence of a subsequent retention agreement, dated April 14, 1995, between the then-adult, Elizabeth Forbes Cronin, and Ankerman & Smith, to serve on an hourly basis vis-à-vis the collection case by Yale University School of Medicine, Office of Professional Service.

### III   Conclusion:

With the numerous examples of erroneous and incompetent expert testimony in this case, misguiding the jury, along with the constitutional defects in the information, and clear perjury in the case, it is evident that this

---

[6] or prove, as the record reflects.
[7] This testimony was also incompetent and illegal under *Kukanskis vs. Jasut*, 169 Conn. 29, 38, 362 A.2d 172 (1975).

conviction[8] was unjust and ought not to serve as a basis for professional discipline in this court, especially with the pendency of the *Petition for a New Trial* in this case, served on or about June 6, 2005.

Thank you for your consideration.

Very truly yours,

William L. Ankerman

Fax  Copy certified to:    Hugh F. Murray, III
                           Murtha, Cullin LLP
                           City Place I, 185 Asylum Avenue
                           Hartford, CT  06103-3469
                           facsimile  860-240-6150

on June 29, 2005.

William L. Ankerman

---

[8] The same arguments made above, concerning the Decree of December 4, 1998, could be made as to the illegitimacy of the Presentment Judgment in *Statewide Grievance Committee vs. Ankerman*, decided August 22, 2001, in which the trial judge, Peck, J, took unnoticed judicial notice of the Decree of December 4, 1998, as a basis for finding 'wrongfulness" by the Respondent.

9